United States District Court
Southern District of Texas
**ENTERED**
March 21, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| LUXOTTICA GROUP, S.P.A.; and OAKLEY, INC., | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 7:20-cv-00061 |
| OCHOA'S FLEA MARKET, LLC; NORMA OCHOA; and MARIA "JANIE" MORENO, | § § § § | |
| Defendants. | § § | |

## OPINION AND ORDER

The Court now considers the parties' cross-motions for summary judgment,[1] and the briefing and exhibits thereof;[2] "Plaintiffs' Motion for Spoliation Order"[3] and Defendants' response;[4] and Defendants' motion for leave to file a surreply[5] and Plaintiffs' response.[6] After considering the motions, record, and relevant authorities, the Court **GRANTS** Defendants' motion for leave to file a surreply, **DENIES** Plaintiff's motion for spoliation, and **DENIES** both sides' motions for summary judgment.

### I. BACKGROUND AND PROCEDURAL HISTORY

This is a trademark infringement case. Plaintiffs Luxottica Group, S.p.A. and Oakley, Inc. own the Ray-Ban® and Oakley® trademarks and allege that Defendants Ochoa's Flea Market, LLC, and its owners Norma Ochoa and Maria "Janie" Moreno operated a "hot-bed for vendors to

---

[1] Dkt. Nos. 26, 28.
[2] Dkt. Nos. 42–43, 45–47.
[3] Dkt. No. 27.
[4] Dkt. No. 44.
[5] Dkt. Nos. 48–49.
[6] Dkt. No. 50.

sell illegal 'knock-off' goods, including counterfeit products" at their open air flea market serviced by numerous vendor booths.[7] After allegedly sending numerous notices to Defendants in an attempt to stop the counterfeit sales, Plaintiffs filed their original complaint in this Court on March 5, 2020, bringing six counts for trademark infringement, dilution, unfair competition, and unjust enrichment under federal and Texas State law.[8] Under the Court's November 12, 2020, First Amended Scheduling Order, discovery closed on June 14, 2021, and the deadline for all parties to bring pretrial motions was June 28th.[9] On June 28th, Plaintiffs and Defendants filed respective motions for summary judgment and Plaintiff filed its motion for a spoliation order.[10] Seventeen days later, however, before briefing concluded on the motions, the parties filed a joint motion to stay all deadlines and a notice of settlement.[11] The Court stayed its consideration and briefing on the pending motions.[12] The parties attempted to finalize settlement over the next few months, and the Court held numerous status conferences inquiring why the parties had been unable to reach a final settlement and dismiss this case.[13] Finally on January 11, 2022, the parties explained that "effectuating settlement was contingent upon third-party financing," which was not forthcoming, so the parties were unable to settle this case.[14] The Court therefore established a briefing schedule on the motions, which had been sitting idle since June 2021 in anticipation of settlement.[15] The parties timely completed briefing, and the motions are now ripe for consideration. The Court turns to its analysis.

---

[7] Dkt. No. 1 at 1–2, ¶¶ 1–2.
[8] Dkt. No. 1.
[9] Dkt. No. 18 at 2.
[10] Dkt. Nos. 26–28.
[11] Dkt. No. 31.
[12] Dkt. No. 32.
[13] *See* Minute Entries (Sept. 14, 2021; Oct. 21, 2021; Dec. 14, 2021).
[14] Dkt. No. 40 at 1–2, ¶ 2.
[15] Dkt. No. 41.

## II. SPOLIATION

Before considering summary judgment, the Court must determine what evidence is properly before the Court. Accordingly, the Court first analyzes "Plaintiffs' Motion for Spoliation Order"[16] and Defendants' response.[17]

### a. Legal Standard

Generally, discovery sanctions are available under Federal Rule of Civil Procedure 37, but misconduct related to litigation that occurs outside the express words of Rule 37 may be sanctioned by the proper exercise of the Court's inherent powers using similar standards as those under Rule 37.[18] "A federal court . . . has the inherent power to sanction a party who has abused the judicial process. The spoliation of evidence is one such abuse."[19] Spoliation of evidence is defined as the "destruction or the significant and meaningful alteration of evidence."[20] A party, even one not yet embroiled in litigation,[21] bears the duty to preserve evidence when the party knows or should have known that the evidence could be relevant to future or present litigation.[22] When valuable evidence is spoliated, a party's ability to pursue its claims is severely hampered and such spoliation often results in irretrievable losses and undermines the adjudicatory process.[23] Therefore, the Fifth Circuit permits adverse inferences or sanctions "against the spoliator only upon a showing of 'bad faith' or 'bad conduct.'"[24] "A spoliation claim has three elements: (1) the

---

[16] Dkt. No. 27.
[17] Dkt. No. 44.
[18] *See ABC Home Health Servs., Inc. v. Int'l Bus. Machs. Corp.*, 158 F.R.D. 180, 182 (S.D. Ga. 1994); *Webb v. District of Columbia*, 146 F.3d 964, 972 n.16 (D.C. Cir. 1998).
[19] *Edwards v. 4JLJ, LLC*, No. 2:15-cv-00299, 2018 WL 2981154, at *2 (S.D. Tex. June 14, 2018) (Ramos, J.) (first citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); and then citing *Rimkus Consulting Grp. v. Cammarata*, 688 F. Supp. 2d 598, 611 (S.D. Tex. 2010) (Rosenthal, J.)).
[20] *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (quoting *Rimkus Consulting Grp.*, 688 F. Supp. 2d at 612).
[21] *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 & n.13 (S.D.N.Y. 2003).
[22] *Guzman*, 804 F.3d at 713; *see Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72–73 (S.D.N.Y. 1991).
[23] *De Los Santos v. Kroger Tex., LP*, No. 3:14-CV-3086-G, 2015 WL 3504878, at *3 (N.D. Tex. June 3, 2015) (collecting cases).
[24] *Guzman*, 804 F.3d at 713 (quoting *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005)).

spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the moving party must show that the spoliating party acted in bad faith."[25] "Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence."[26] The Court may redress spoliation only so far as necessary to remedy the spoliation;[27] remedies must be attune to the egregiousness of the conduct and prejudice to the aggrieved party.[28]

### b. Analysis

Plaintiffs claim that Defendants destroyed "vendor records" that would have evidenced whether Defendants "took any action to terminate the infringing vendors" in response to Plaintiffs' notices of infringement.[29] Thus, Plaintiffs cannot obtain vendor testimony or investigate vendor inventories and Plaintiffs' ability to demonstrate Defendants' willful blindness and contributory infringement is impaired. Plaintiffs contend that the vendor records are relevant to their claims of trademark infringement.[30] The Supreme Court has held that, "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit,"[31] and courts

---

[25] *Coastal Bridge Co. v. Heatec, Inc.*, 833 F. App'x 565, 574 (5th Cir. 2020) (per curiam).

[26] *Guzman*, 804 F.3d at 713 (citing *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998)).

[27] *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)).

[28] *See Coastal Bridge Co.*, 833 F. App'x at 573 (quoting *Menges v. Cliffs Drilling Co.*, No. CIV. A. 99-2159, 2000 WL 765082, at *1–2 (E.D. La. June 12, 2000)); *Rimkus Consulting Grp. v. Cammarata*, 688 F. Supp. 2d 598, 618 (S.D. Tex. 2010) (Rosenthal, J.) (collecting cases); *Danis v. USN Commc'ns, Inc.*, 53 Fed. R. Serv. 3d (West) 828, at *31 (N.D. Ill. Oct. 20, 2000) (collecting cases); *Castano v. Wal-Mart Stores Tex., LLC*, No. 4:14-cv-01450, 2015 WL 2180573, at *2 (S.D. Tex. May 7, 2015) (Miller, J.) (collecting cases).

[29] Dkt. No. 27 at 10–11, ¶ 15.

[30] *Id.* at 10, ¶ 14.

[31] *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 854 (1982).

in the Fifth Circuit including this one have extended this holding to providers of services.[32] Thus, this Court agrees that these records are relevant.

In response, Defendants deny they had any duty to preserve vendor records.[33] Defendant Janie Moreno's affidavit reveals that she had possession of vendor records at one time and was aware of Plaintiffs' notices of infringement and allegations of counterfeit sales.[34] Furthermore, the corporate representative of Ochoa's Flea Market, LLC testified that it was the business's usual practice to obtain vendor agreements, then discard such agreements even after a lawsuit was filed.[35] Defendants cite a Seventh Circuit case as support for their position that they had no duty to preserve,[36] but that case merely held that the district court failed to sufficiently develop the factual record with respect to a flea market operator's duty to take precautions against the sale of counterfeit merchandise and remanded for further factual development.[37] While the case appears to support Defendants at first glance, it did not concern spoliation of evidence, and the appellate court "emphasize[d]" that it was only vacating the district court's judgment that the flea market operator was willfully blind without adjudging that the evidence could not later support that conclusion.[38] Defendants' other cited case specifically notes that "the obligation to preserve evidence even arises prior to the filing of a complaint where a party is on notice that litigation is likely to be commenced."[39] Defendants' assertion that, "[e]ven with a threat of litigation by Plaintiffs, it was not reasonable for Defendants to believe that litigation would occur [and records

---

[32] *Malletier v. Tex. Int'l P'ship*, No. 4:10-cv-02821, 2009 U.S. Dist. LEXIS 148848, at *13 (S.D. Tex. Nov. 18, 2011) (Miller, J.); *Eclipse Aesthetics LLC v. RegenLab USA, LLC*, No. 3:15-cv-03748-M, 2016 U.S. Dist. LEXIS 105920, at *8 (N.D. Tex. Aug. 10, 2016).
[33] Dkt. No. 44 at 16–17, ¶ 3.05.
[34] Dkt. No. 47 at 2–3, ¶¶ 10–13.
[35] Dkt. No. 27-1 at 3, 27:8–23.
[36] Dkt. No. 44 at 17, ¶ 3.05.
[37] *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992).
[38] *Id.*
[39] *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 73 (S.D.N.Y. 1991).

would be needed],"[40] flies in the face of this circuit's spoliation law.[41] The Court therefore finds that Plaintiffs satisfy the first element of a spoliation claim.

With respect to the second element of a spoliation claim, the Fifth Circuit has emphasized that mere negligence is insufficient and spoliation requires the intentional or bad faith purposeful destruction of evidence.[42] Plaintiffs argue that the destruction of vendor records here was done "despite Plaintiffs' repeated request for that very information and documentation over the course of nine separate notices in almost two years," so the circumstances demonstrate bad faith spoliation.[43] Defendants counter that the destruction of vendor records was, at most, negligence while performing routine business procedures.[44] The evidence indicates that Plaintiffs' first notice of infringement was dated June 9, 2017, and discussed Defendants' potential legal liability for trademark infringement and unfair competition and requested the contact information of the vendor "located on the left side, upon entering the north entrance of Ochoa" and "all agreements between Ochoa and the foregoing vendor, including all contractual agreements."[45] Defendant Janie Moreno avers that "Horacio Peña . . . is corporate counsel for Ochoa's Flea Market, LLC" and that she forwarded all infringement notices to him and followed Mr. Peña's advice about what to do.[46] Horacio Peña's response letter to Plaintiffs' initial notice of infringement, dated July 7, 2017, explains that Defendants require vendors to sign a document at the time of leasing a space in the flea market that includes a clause that the merchandise the vendor will sell is not illegal and does

---

[40] Dkt. No. 44 at 17, ¶ 3.05.

[41] *See supra note* 22.

[42] *See, e.g.*, *United States v. Rodriguez-Sanchez*, 741 F. App'x 214, 222 (5th Cir. 2018); *Coastal Bridge Co. v. Heatec, Inc.*, 833 F. App'x 565, 573–74 (5th Cir. 2020) (citing *Catoire v. Caprock Telecomm. Corp.*, No. CIV.A. 01-3577, 2002 WL 31729484, at *1 (E.D. La. Dec. 2, 2002)).

[43] Dkt. No. 27 at 11, ¶ 15.

[44] Dkt. No. 44 at 18, ¶ 3.07.

[45] Dkt. No. 26-1 at 220–21.

[46] Dkt. No. 47 at 2–3, ¶¶ 10–12.

not violate State or Federal law.[47] In another prelitigation letter, dated November 27, 2019, Plaintiff Luxottica's counsel wrote directly to Horacio Peña and argued that Plaintiff has repeatedly requested Defendants' vendor records but Defendants had "refused to provide such information despite the fact that [Mr. Peña] make[s] mention in [his] letter that such agreements exist."[48] Mr. Peña responded and clarified that his clients "have attempted to implement every lawful policy to avoid tenants" who may be infringing a trademark,[49] but Luxottica's counsel responded by complaining about Defendants' lack of cooperation and pointing out that Defendants had consistently failed to transmit any vendor agreement.[50] During discovery in this case, Plaintiffs transmitted interrogatories and requests for production seeking vendor records, but Defendants admitted that all responsive records were destroyed after a vendor termination or departure.[51] Defendant Janie Moreno avers that she and her business partner lack any formal business training, have never had a formal recordkeeping system, discarded vendor records as nearly daily routine procedure after a vendor turnover, did not intend to destroy records of relevant vendors, and "that some records may have been lost due to cleaning efforts by our staff."[52]

The Court holds that, while Defendants acted negligently or even recklessly in discarding vendor records, Defendants' culpability does not rise to bad faith. Bad faith is a high hurdle—more than even the intentional destruction of information despite looming litigation—a finding of bad faith must be predicated on the destruction of information *for the purpose of* hiding adverse information, or on behavior seeking to avail of a later litigation advantage, or on some other conscious wrongdoing.[53] Here, Defendant Moreno avers that she never kept any vendor records

---

[47] Dkt. No. 26-1 at 299.
[48] Dkt. No. 26-1 at 297.
[49] Dkt. No. 26-1 at 306.
[50] Dkt. No. 26-1 at 297.
[51] Dkt. No. 26-2 at 9.
[52] Dkt. No. 47 at 3, ¶ 13.
[53] *See Rogers v. Averitt Express, Inc.*, 215 F. Supp. 3d 510, 517–519 (M.D. La. 2017) (collecting cases).

throughout Ochoa's Flea Market, LLC's existence for more than a few days or weeks and simply did not modify her routine procedure even though Plaintiffs sent numerous threats and demanded the records. Defendants did not shred *certain* vendor records and retain others, or rush to discard all vendor records and institute a policy of disposing of all of them after a particular notice of infringement, or even discard more records or discard records more often; Defendants simply never kept the vendor records that Plaintiffs now argue were spoliated. The Court does not find that such conduct rises to the purposeful bad faith required in the Fifth Circuit to substantiate a spoliation claim.[54] Because Plaintiffs cannot demonstrate the requisite elements of a spoliation claim,[55] their motion fails. Plaintiffs' motion for a spoliation order is **DENIED**.

### III. LOGAN BEDNARCZUK DECLARATION

Before the Court may turn to summary judgment, the Court must address issues that arose during briefing. Plaintiffs open their motion for summary judgment by repeatedly citing a declaration of Logan Bednarczuk for their section on "Undisputed Facts."[56] In their response brief to Plaintiffs' motion for summary judgment, Defendants object to Plaintiffs' statement of purportedly undisputed facts and request the Court strike the declaration and its exhibits.[57] Plaintiffs respond to Defendants' objection in their reply brief.[58] One week after Plaintiffs filed their reply brief, Defendants filed a motion for leave to file their surreply, arguing that Plaintiffs' reply brief raised three new arguments to which Defendants should be entitled to respond,[59] and

---

[54] *See supra* note 42.
[55] *See supra* notes 25–26.
[56] Dkt. No. 26 at 6–8, ¶¶ 1–4 (citing Dkt. No. 26-1).
[57] Dkt. No. 43 at 2, ¶ 2.01.
[58] Dkt. No. 45 at 2, ¶¶ 2–4.
[59] Dkt. No. 48 at 1, ¶ 1.

filed their surreply without leave of Court.[60] In response, Plaintiffs deny that they raised new arguments and urge the Court to deny Plaintiffs' leave to file a surreply.[61]

The Court will treat the parties' briefing as effectively a motion to strike certain evidence. The Court now turns to the evidentiary issues raised in the parties' briefs and Defendants' motion to file a surreply.

### a. Legal Standard

When considering whether to grant summary judgment, the Court must address the threshold issue of admissibility.[62] The Court cannot consider evidence that would be inadmissible at trial,[63] such as affidavits or declarations founded on hearsay[64] or outside the personal knowledge of the declarant[65] or irrelevant evidence[66] or unauthenticated documents.[67] Therefore, an opposing litigant may timely move to strike (or simply object to[68]) an affidavit or declaration that does not measure up to the requisite standards.[69] Failure to timely object or move to strike permits the Court

---

[60] Dkt. No. 49.

[61] Dkt. No. 50.

[62] *United States v. Hangar One, Inc.*, 563 F.2d 1155, 1157 (5th Cir. 1977).

[63] *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) ("[O]n a motion for summary judgment, the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial.").

[64] *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 510 n.5 (5th Cir. 2001) (citing *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995)).

[65] *See Burton v. Banta Glob. Turnkey Ltd.*, 170 F. App'x 918, 923 (5th Cir. 2006) (citing FED. R. CIV. P. 56(e) and *Cormier v. Pennzoil Expl. & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992)); *Amie v. El Paso Indep. Sch. Dist.*, 253 F. App'x 447, 451 (5th Cir. 2007) (quoting *El Deeb v. Univ. of Minn.*, 60 F.3d 423, 428 (8th Cir. 1995)) ("Affidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge."); *Pedraza v. Jones*, 71 F.3d 194, 197 (5th Cir. 1995) (affirming the striking of an affidavit because the affiant "possessed no personal knowledge" of the relevant mental condition); *Town of Abita Springs v. U.S. Army Corps of Engineers*, 153 F. Supp. 3d 894, 907–08 (E.D. La. 2015) (holding that a witness is not competent to testify to the perceptions, beliefs, or motivations of others); *cf. Richardson v. Oldham*, 12 F.3d 1373, 1379 (5th Cir. 1994) ("The district court's ruling would be well taken if Jones was asserting that Harrell *actually used* illegal searches, but Jones's affidavit merely states that *Jones believed* Harrell's tactics were unlawful.").

[66] *Perez v. Tex. Dep't of Crim. Just., Inst. Div.*, 395 F.3d 206, 210 (5th Cir. 2004) (citing FED. R. EVID. 401).

[67] *Johnson v. Spohn*, 334 F. App'x 673, 677 (5th Cir. 2009).

[68] *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012) (per curiam) (holding that a litigant may simply object to material it argues is inadmissible); *see* FED. R. CIV. P. 56(c)(2); 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE – CIVIL § 56.91 (4th ed.).

[69] *Auto Drive-Away Co. of Hialeah v. Interstate Com. Comm'n*, 360 F.2d 446, 448–49 (5th Cir. 1966).

to rely on uncontradicted averments.[70] Affidavits and declarations must meet strict standards,[71] but need not internally prove the admissibility of the statements contained therein.[72] A witness who has personalized knowledge of facts based on the witness's personal perception may swear to those facts[73] and the witness's affidavit may not be excluded or stricken because of gaps in knowledge.[74] For example, "an officer or employee of a corporation may testify to industry practices and pricing

---

[70] *See Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 383 (5th Cir. 1987) (citing *In re Teltronics Servs.*, 762 F.2d 185, 192 (2d Cir. 1985)); *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 531 (5th Cir. 1992) ("On a motion for summary judgment, the district court should disregard only those portions of an affidavit that are inadequate and consider the rest."); *cf. S. Concrete Co. v. U.S. Steel Corp.*, 394 F. Supp. 362, 380–81 (N.D. Ga. 1975) ("While the court may strike or disregard the inadmissible portions of such affidavit not in conformity with the rule and consider the rest of the affidavit, the entire affidavit may be disregarded if inadmissible matter is so interwoven or inextricably combined with the admissible portions that it is impossible, in the practical sense, to separate them."), *aff'd*, 535 F.2d 313 (5th Cir. 1976). *But see* William W. Schwarzer, Alan Hirsch, & David J. Barrans, *The Analysis and Decision of Summary Judgment Motions A Monograph on Rule 56 of the Federal Rules of Civil Procedure*, 139 F.R.D. 441, 482 (1992) (footnote omitted) ("Courts have occasionally bypassed the rule forbidding consideration of inadmissible evidence on a motion for summary judgment on the ground that the movant did not object. To deny summary judgment because of such evidence is to equate the movant's failure to object with a waiver of the objection at trial. There is no basis for doing so, because making an objection at the time of the motion is not required to preserve the objection for trial.").

[71] *Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) (citation omitted) (holding that Federal Rule of Civil Procedure 56(e)'s "requirement of personal knowledge by the affiant is unequivocal, and cannot be circumvented. An affidavit based merely on information and belief is unacceptable"); *Smith v. Consol. Recreation & Cmty. Ctr.*, 131 F. App'x 988, 989–90 (5th Cir. 2005) (per curiam) (citing *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988)) ("[T]his submission is not competent summary judgment evidence, because it is not sworn to be true and correct before a public notary or stated to be true and correct under penalty of perjury."); *Watts v. Kroger Co.*, 170 F.3d 505, 508–09 (5th Cir. 1999) (affirming the striking of handwritten, unsworn, and unnotarized statements).

[72] *See Patel v. Tex. Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019) (holding that Federal Rule of Civil Procedure 56(c) "permits a party to support or dispute summary judgment through unsworn declarations, provided their contents can be presented in admissible form at trial"); *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (holding that a proponent may present evidence that is not, in itself, admissible at trial if the evidence could be shown to be admissible at trial); *United States v. Hangar One, Inc.*, 563 F.2d 1155, 1157 (5th Cir. 1977) ("Contrary to the decision of the trial court, it is sufficient if the statements contained in the affidavit are in fact admissible; the affidavit need not contain any affirmative showing of admissibility."). *But see BMG Music v. Martinez*, 74 F.3d 87, 90 n.18 (5th Cir. 1996) (holding that conflicting evidence as to whether the affiant had personal knowledge of crucial facts precluded the court from considering the affiant's affidavit); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (holding that a verified pleading may serve as an affidavit in support of a motion for summary judgment only if it satisfies the affidavit standards, so a verified pleading that did not affirmatively show that the individual was speaking from his personal knowledge was insufficient to grant summary judgment).

[73] *Miss. Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002).

[74] *See Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1199 (3d Cir. 1995) ("Given that the witness in question had extensive personal knowledge of plaintiff's plants and the furnaces in question, we concluded that the witness's opinion was rationally based on his personal knowledge and that the witness's inability to state precisely why a furnace was inoperable at a particular time was proper material for cross-examination rather than a basis for inadmissibility.").

without qualifying as an expert" based on that officer's or employee's particularized knowledge.[75] However, conclusory and self-serving statements in an affidavit do not suffice to defeat summary judgment.[76] "[T]he mere reargument of a party's case or the denial of an opponent's allegations will be disregarded."[77]

### b. Analysis

Plaintiffs begin their motion for summary judgment by attempting to establish their ownership of proprietary trademarks and those trademarks' enforceable status in the United States.[78] To establish these facts, Plaintiffs cite repeatedly to a declaration signed by Luxottica's "Intellectual Property Enforcement Counsel" Logan Bednarczuk.[79] Defendants move to strike the declaration (in their response brief), arguing that various assertions therein do not comport with the Federal Rules of Civil Procedure and Evidence.[80] In response (in their reply brief), Plaintiffs first argue that Defendants violated Local Rule 7.1.D because Defendants failed to confer regarding their motion to strike.[81] In their motion for leave to file a surreply, Defendants argue that this is a new argument that justifies leave for Defendants to file a surreply.[82]

---

[75] *Tex. A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 403 (5th Cir. 2003).

[76] *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 n.49 (5th Cir. 2005); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object of this provision [Federal Rule of Civil Procedure 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *Ray v. The Geo Grp.*, 547 F. App'x 443, 446 (5th Cir. 2013) (quoting *Sanchez v. Dall./Fort Worth Int'l Airport Bd.*, 438 F. App'x 343, 346–47 (5th Cir. 2011) ("[I]t is well settled that 'a self-serving affidavit, without more evidence, will not defeat summary judgment.'"); *Orthopedic & Sports Inj. Clinic v. Wang Lab'ys, Inc.*, 922 F.2d 220, 225 (5th Cir. 1991) (cleaned up) ("Unsupported affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment."). *But see Spring St. Partners - IV, L.P. v. Lam*, 730 F.3d 427, 441 & n.7 (5th Cir. 2013) (holding that there is nothing wrong with a self-serving affidavit provided that it is adequately supported).

[77] 10B MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2738 (3d ed. 1998 & Supp. Apr. 2021) (citing *Goodloe v. Davis*, 514 F.2d 1274 (5th Cir. 1975)); *see Eguia v. Tompkins*, 756 F.2d 1130, 1136 (5th Cir. 1985) (footnote omitted) ("[The attorney's affidavit] attests to the truth of the facts and allegations contained in the defendants' motion. As to at least one of these facts, it appears that the attorney lacked personal knowledge. We cannot condone the use of such an improper affidavit.").

[78] *See* Dkt. No. 26 at 6–7, ¶¶ 1–4.

[79] Dkt. No. 26-1 at 1, ¶ 1.

[80] Dkt. No. 43 at 2–3, ¶¶ 2.01–2.05.

[81] Dkt. No. 45 at 2, ¶ 2.

[82] Dkt. No. 48 at 1–2, ¶ 2.

No party must make an independent motion to strike evidence; a party may object to the admissibility of evidence at any time.[83] The parties' dispute over the propriety of Defendants' objection to Plaintiffs' evidence is founded on the misconception that an independent motion to strike was necessary. In the ordinary course, parties are entitled to file a motion, respond once, and reply once to that response.[84] Because Defendants' *response* brief raised new evidentiary issues, to which Plaintiffs' *reply* brief responded, the Court finds that Defendants' request to file a surreply—effectively a reply brief to Plaintiffs' response regarding the evidentiary issues—is well-taken. At this stage, the parties have effectively already briefed the evidentiary objections.[85] Striking the issue from consideration—whether the Court disregards Plaintiffs' embedded motion to strike or disregards Defendants' surreply (which is in effect a reply to Plaintiffs' response)— would elevate form over substance. Defendants' motion for leave to file a surreply[86] is **GRANTED**. The Court will consider Defendants' surreply.[87]

Turning to the merits of the Logan Bednarczuk Declaration, Defendants first imply that the Court should strike the Declaration in its entirety because "it is predicated on the declarant's 'information and belief.'"[88] The Declaration opens by explaining that the declarant is counsel for Plaintiff Luxottica Group S.p.A. (Plaintiff Oakley, Inc. is an indirect, wholly-owned subsidiary of Luxottica Group S.p.A.[89]), has personal knowledge of their business, and goes on to cite Luxottica's trademarks.[90] An admissible declaration need only furnish a basis for showing that the witness has personal knowledge of and is competent to testify about the subject matter of the

---

[83] *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012) (per curiam).
[84] *See* LR7.4.
[85] *See* Dkt. Nos. 43, 45, 48–50.
[86] Dkt. No. 48.
[87] Dkt. No. 49.
[88] Dkt. No. 43 at 3, ¶ 2.03.
[89] Dkt. No. 1 at 2, ¶ 5.
[90] Dkt. No. 26-1 at 2, ¶¶ 1–3.

declaration.[91] The Court does not find the declaration inadmissible as a whole simply because it is founded on an attorney's knowledge of his client's business and intellectual property.

Defendants next argue that the Court should strike certain sentences of the Logan Bednarczuk Declaration because they are based on inadmissible hearsay.[92] Specifically, Defendants seek to strike the following sentences:

> 11. During each of these visits, Plaintiffs' investigators observed and purchased sunglasses bearing the Ray-Ban® and Oakley® Trademarks and believed to be counterfeit, in part because they were offered at prices significantly below retail price for authentic goods bearing the Ray-Ban® and Oakley® Trademarks—often as low as 1/3 the typical retail price.

> 13. On or about June 13, 2020, more than one month after this lawsuit was filed, Luxottica and Oakley's investigator returned to Ochoa's Flea Market and once again observed tenants at Ochoa's Flea Market publicly displaying, offering for sale, and selling sunglasses bearing the Ray-Ban® and Oakley® Trademarks.

> 15. However, based on the repeated investigations showing the same tenants dealing in counterfeit goods, even after the filing of this lawsuit, it appears that Defendants did not terminate the infringing tenants or otherwise restrict their access to the flea market and consumers visiting the flea market.[93]

Hundreds of pages of exhibits accompany the Logan Bednarczuk Declaration, including investigative reports of alleged counterfeit product selling at Defendants' flea market. Mr. Bednarczuk predicates his declarations partly on the attached investigative reports.[94] Defendants move to strike these investigative reports also as inadmissible hearsay, including and especially any statement recorded in the investigative reports.[95] Plaintiffs counter that the investigative reports are business records, supported by the physical evidence of counterfeit goods, and that

---

[91] *See supra* notes 72–73.
[92] Dkt. No. 43 at 3, ¶ 2.04.
[93] Dkt. No. 26-1 at 5–6.
[94] *Id.* at 4, ¶ 10 (citing Dkt. No. 26-1 at 44–219); *id.* at 6, ¶ 13 (citing Dkt. No. 26-1 at 312–327).
[95] Dkt. No. 43 at 4, ¶¶ 2.05–2.06.

moreover Defendants have conceded "the sale of counterfeit products by their tenants" at the flea market.[96]

First, Defendants purported concession, in the absence of a stipulation, does not render evidence admissible.[97] Second, even if Plaintiffs' investigative reports constitute the regularly conducted business activity of the investigative firm,[98] the investigative reports are nevertheless hearsay[99] that do not meet the Federal Rule of Evidence 803(6) business records exception. In order to certify under Federal Rules of Evidence 803(6)(D) and 902(11) that certain records are admissible as a hearsay exception, the certifier must be able to "explain the record keeping system of the organization and vouch that the requirements of the business records exception are met."[100] A certification that renders the records admissible generally tracks the language of Rule 803(6).[101] A person who merely analyzes records after they are compiled, but lacks familiarity with the record keeping procedures of the compiler, is not competent to certify records as a hearsay exception.[102] Far from certifying the investigative reports as an 803(6) exception, Logan Bednarczuk only avers that investigators visited Defendants' flea market and "[t]rue and correct copies of the investigator report for each of these visits are collectively attached" to the declaration.[103] Mr. Bednarczuk does not demonstrate any familiarity with the investigative firms or their procedures. The Court holds that Mr. Bednarczuk's declaration is insufficient to satisfy the Rule 803(6) exception to render the investigative reports admissible. With that holding, the Court agrees with Defendants that Mr.

---

[96] Dkt. No. 45 at 2–3, ¶ 4.
[97] *Cf.* FED. R. EVID. 104(a) (the court decides whether evidence is admissible).
[98] *See* ROBERT P. MOSTELLER ET AL., MCCORMICK ON EVIDENCE § 288 n.27 (8th ed. Supp. Jan. 2020).
[99] *See* FED. R. EVID. 801(c).
[100] *United States v. Ned*, 637 F.3d 562, 570 (5th Cir. 2011) (per curiam).
[101] *See United States v. Towns*, 718 F.3d 404, 409 n.7 (5th Cir. 2013); *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 272 (5th Cir. 1991).
[102] *See United States v. Brown*, 553 F.3d 768, 792–93 (5th Cir. 2008); *see U.S. Commodity Futures Trading Comm'n v. Dizona*, 594 F.3d 408, 416 (5th Cir. 2010)
[103] Dkt. No. 26-1 at 4, ¶ 10; *accord id.* at 6, ¶ 13.

Bednarczuk's averments in paragraphs eleven, thirteen, and fifteen recopied above are based on inadmissible hearsay, not the personal knowledge of the declarant, and so should be stricken. Defendants' objections are sustained.

Defendants object to other declaration sentences as conclusory and unsubstantiated.[104] Specifically, Defendants seek to strike the following clauses:

> 12. . . . but Defendants ignored the request.

> 15. Defendants also reported that they would "cooperate fully to remove these vendors." However, based on the repeated investigations showing the same tenants dealing in counterfeit goods, even after the filing of this lawsuit, it appears that Defendants did not terminate the infringing tenants or otherwise restrict their access to the flea market and consumers visiting the flea market.

> 16. The repeated and ongoing trafficking in goods bearing counterfeit Ray-Ban® or Oakley® Trademarks causes substantial harm to Luxottica and Oakley, particularly in that neither Luxottica nor Oakley has any control over the sales of these inferior, poor-quality products being offered to purchasing consumers as authentic Ray-Ban® or Oakley® goods. Such ongoing infringement continues to degrade the business of Plaintiffs and diminishes the goodwill Plaintiffs have gone to great effort and expense to create in their brands.

"Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."[105] Whether these declarations are admissible depends on the declarant's basis for knowledge. Logan Bednarczuk appears to predicate these declarations partly on pre-litigation and post-litigation correspondence and the investigative reports. With respect to the correspondence, Defendants move to strike every one of the letters transmitted by Plaintiffs as inadmissible hearsay.[106] The correspondence is hearsay because the letters are offered to prove that Defendants ignored Plaintiffs' requests, did not remove vendors, and did not stop vendors

---

[104] Dkt. No. 43 at 3, ¶¶ 2.05–2.06.
[105] *TIG Ins. Co. v. Sedgwick James of Wash. & Lumbermens Mut. Cas. Co.*, 276 F.3d 754, 759 (5th Cir. 2002).
[106] Dkt. No. 43 at 4, ¶ 2.06.

from selling infringing merchandise,[107] which are assertions Mr. Bednarczuk's letters make.[108] Instead of invoking a hearsay exception, Plaintiffs bafflingly claim that "the letters are direct communications between the parties to this lawsuit," are not hearsay, "and are admissible as admissions by party opponent."[109] But Plaintiffs do not offer and Defendants do not object to any of Defendants' counsel's letters; Defendants only object to *Plaintiffs'* letters, which cannot be Defendants' admissions. The proponent of evidence "must be able to demonstrate how it will be possible to introduce the content or substance of the material at trial."[110] Because Plaintiffs do not show that their letters are admissible under any hearsay exception, they will be ignored for purposes of summary judgment. Defendants' objection to Plaintiffs' letters is sustained.

Turning to the attacked portions of the Logan Bednarczuk Declaration, the first clause Defendants seek to strike appears in this context: "Moreover, in every single notice, Plaintiffs requested that Defendants provide contact information for the specific vendors identified in each notice letter, **but Defendants ignored the request**. True and correct copies of all formal notices to Defendants, and their responses, are respectively attached hereto at Exhibits 6 and 7."[111] Again, "[e]vidence on summary judgment may be considered to the extent not based on hearsay or other information excludable at trial."[112] Because Plaintiffs' claim of what Defendants did or did not do constitutes hearsay and is conclusory, the Court agrees that the independent clause "but Defendants ignored the request" is not to be considered for purposes of summary judgment. The objection to that clause is sustained. The next attacked sentence, "Defendants also reported that they would

---

[107] *See* FED. R. EVID. 801(c).
[108] *E.g.*, Dkt. No. 26-1 at 222–23.
[109] Dkt. No. 45 at 3, ¶ 6.
[110] 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE – CIVIL § 56.91[2] (Supp. Mar. 2022), *quoted in Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017).
[111] Dkt. No. 26-1 at 5, ¶ 12 (emphasis added).
[112] *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995).

'cooperate fully to remove these vendors,'"[113] is contained in Defendants' counsel's uncontroverted letter,[114] and further admitted to in Plaintiffs' request for admission.[115] The sentence is admissible and Defendants' objection to it is overruled. However, the following sentence of the declaration paragraph fifteen is based on the excluded investigative reports and therefore the objection thereto, as above, is sustained. Lastly, the attacked paragraph sixteen is founded upon Logan Bednarczuk's years of experience as intellectual property enforcement counsel for Plaintiff Luxottica Group, S.p.A.[116] The Court holds that Mr. Bednarczuk has sufficient knowledge to opine that counterfeit sales harm Plaintiffs' business.[117] Defendants' objection to paragraph sixteen recopied above is overruled.

In sum, the Court sustains some of Defendants' objections to Plaintiffs' evidence. The Court will not consider the investigative reports of allegedly counterfeit merchandise, the pre- and post-litigation correspondence transmitted by Logan Bednarczuk, and the above-referenced portions of paragraphs eleven, twelve, thirteen, and fifteen of Mr. Bednarczuk's declaration.

Having ascertained the evidence before the Court, the Court now turns to the cross motions for summary judgment.

## IV. SUMMARY JUDGMENT

### a. Legal Standard

Federal Rule of Civil Procedure 56 provides that a court shall award summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment

---

[113] Dkt. No. 26-1 at 6, ¶ 15.
[114] *Id.* at 300.
[115] Dkt. No. 45 at 3, ¶ 5 (quoting Dkt. No. 26-2 at 16, Q&A 5).
[116] *See* Dkt. No. 26-1 at 2, ¶ 1.
[117] *See supra* note 75.

as a matter of law."[118] One principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses" and should be interpreted to accomplish this purpose.[119]

To earn summary judgment, the movant must demonstrate that there are no disputes over genuine and material facts and that the movant is entitled to summary judgment as a matter of law.[120] "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."[121] The movant "bears the initial burden of . . . demonstrat[ing] the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case."[122] In other words, a movant may satisfy its burden by pointing out the absence of evidence to support the nonmovant's case if the nonmovant would bear the burden of proof with respect to that element at trial.[123] To demonstrate the absence of a genuine dispute of material fact, the movant must point to competent evidence in the record, such as documents, affidavits, and deposition testimony[124] and must "articulate precisely how this evidence supports his claim,"[125] to "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[126] If the

---

[118] FED. R. CIV. P. 56(a); *see Bulko v. Morgan Stanley DW Inc.*, 450 F.3d 622, 624 (5th Cir. 2006).

[119] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[120] *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993).

[121] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986), *quoted in Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002); *accord Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (holding that, if the movant intends to rely on an affirmative defense, "it must establish beyond dispute all of the defense's essential elements").

[122] *Lynch Props. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998).

[123] *Celotex Corp.*, 477 U.S. at 325; *see Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted) ("Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial.").

[124] FED. R. CIV. P. 56(c)(1); *see Pioneer Expl., L.L.C.*, 767 F.3d at 511 (quotation omitted) ("The movant . . . must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.").

[125] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[126] *Celotex Corp.*, 477 U.S. at 322 (quoting FED. R. CIV. P. 56(c)).

movant fails to meet its initial burden, the motions for summary judgment "must be denied, regardless of the nonmovant's response."[127] Accordingly, the Court may not enter summary judgment by default,[128] but may accept a movant's facts as undisputed if they are unopposed.[129]

If the movant meets its initial burden, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts" that demonstrate the existence of a genuine issue for trial.[130] The nonmovant's demonstration cannot consist solely of "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation"[131] and a "mere scintilla of evidence" also will not do.[132] Even if the nonmovant produces more than a scintilla of evidence in its favor, such evidence may be "so overwhelmed by contrary proof" that summary judgment is still proper in favor of the movant.[133] The Court does not need to "credit evidence that is 'blatantly contradicted by the record,' especially by video or photographic evidence."[134] Neither self-serving allegations nor conclusory affidavits can defeat a motion for summary judgment supported by probative evidence.[135] "[T]he nonmoving party must adduce evidence sufficient to

---

[127] *Pioneer Expl., L.L.C.*, 767 F.3d at 511  (quotation omitted).

[128] *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

[129] *Eversley v. MBank Dall.*, 843 F.2d 172, 174 (5th Cir. 1988); *see* LR7.4 ("Failure to respond to a motion will be taken as a representation of no opposition").

[130] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) ("[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."); *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991) ("[T]he party responding to a summary judgment motion must support her response with specific, non-conclusory affidavits or other competent summary judgment evidence.").

[131] *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *TIG Ins. Co. v. Sedgwick James of Wash. & Lumbermens Mut. Cas. Co.*, 276 F.3d 754, 759 (5th Cir. 2002)).

[132] *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *accord Germain v. US Bank Nat'l Ass'n*, 920 F.3d 269, 272 (5th Cir. 2019).

[133] *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (quoting *Neely v. Delta Brick and Tile Co.*, 817 F.2d 1224, 1226 (5th Cir. 1987)), *abrogated on other grounds by Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000).

[134] *Malbrough v. Stelly*, 814 F. App'x 798, 804 (5th Cir. 2020) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

[135] *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 227 (5th Cir. 2018); *see Cadena v. El Paso County*, 946 F.3d 717, 725 (5th Cir. 2020) ("[A]ffidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment.").

support a jury verdict."[136] The Court will countenance only *reasonable* inferences in the nonmovant's favor and will not indulge "senseless" theories or leaps in logic.[137] The nonmovant is "*required* to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."[138] "A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists."[139] Courts "will not assume 'in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts,' and will grant summary judgment 'in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'"[140] The Court is under no duty to sift through the entire record in search of evidence to support the nonmovant's opposition to summary judgment.[141]

"A fact is 'material' if its resolution could affect the outcome of the action,"[142] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[143] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[144] "Although this is an

---

[136] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[137] *See Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 468–69 & n.14 (1992).

[138] *Ragas*, 136 F.3d at 458 (emphasis added).

[139] *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006); *see Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quotation and alteration omitted) ("When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case."); *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992) ("To avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case.").

[140] *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

[141] *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *accord Adams Family Tr. v. John Hancock Life Ins. Co.*, 424 F. App'x 377, 380 n.2 (5th Cir. 2011).

[142] *Burrell v. Dr. Pepper/Seven UP Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007).

[143] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006); *see Bache v. Am. Tel. & Tel. Co.*, 840 F.2d 283, 287 (5th Cir. 1988) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) ("[T]o determine if an issue of material fact is genuine, we must then decide whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'").

[144] *Anderson*, 477 U.S. at 248.

exacting standard, summary judgment is appropriate where the only issue before the court is a pure question of law."[145] The Court does not weigh the evidence or evaluate the credibility of witnesses and views all facts and inferences in the light most favorable to the nonmovant,[146] including "resolv[ing] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[147]

### b. Analysis

#### 1. *Plaintiffs' Motion for Summary Judgment*

The Court will first address Plaintiffs' motion for summary judgment.[148] Plaintiffs' first count is for contributory trademark infringement under the Lanham Act.[149] The Supreme Court established that a defendant may be liable for contributory infringement,[150] and again, this holding has been extended to providers of services.[151] "A party is liable for contributory infringement when it, with knowledge of the infringing activity, induces, causes or materially contributes to infringing conduct of another."[152] So, for example, if one party induces another's infringement, or continues to supply its product or service to a party whom it is aware is probably engaging in infringement, the first party is contributorily liable.[153] This means that there must be underlying direct infringement by another party.[154] For Plaintiffs to prove a direct trademark infringement claim, Plaintiffs must show that they possess a legally protectable mark and that Defendants' vendors' use of the "mark and image, likeness, and other referents to [the mark] creates a likelihood of

---

[145] *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991).
[146] *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).
[147] *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).
[148] Dkt. No. 26.
[149] Dkt. No. 1 at 57, ¶ 107 (citing 15 U.S.C. § 1114).
[150] *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 854 (1982).
[151] *See supra* note 32.
[152] *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999) (quotation omitted).
[153] *See Inwood Lab'ys, Inc.*, 456 U.S. at 854.
[154] *Phoenix Ent. Partners LLC v. Boyte*, 247 F. Supp. 3d 791, 797 (S.D. Tex. 2017) (Rosenthal, C.J.) (citing *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1240 (10th Cir. 2013)).

confusion in the minds of potential consumers as to the source, affiliation, or sponsorship" of the

mark.[155] "'Likelihood of confusion' is thus the central issue in any suit for trademark infringement,

as it is in suits for unfair competition."[156]

> The factors used by this Circuit in determining whether a likelihood of confusion
> exists are: "(1) strength of the plaintiff's mark; (2) similarity of design between the
> marks; (3) similarity of the products; (4) identity of retail outlets and purchasers;
> (5) similarity of advertising media used; (6) the defendant's intent; (7) actual
> confusion; and (8) degree of care exercised by potential purchasers."[157]

"No one factor is dispositive, and a finding of a likelihood of confusion does not even require a

positive finding on a majority of these digits of confusion."[158] Importantly, trademark usage that

creates initial confusion or lures customers to investigate merchandise, even if the confusion is

dissipated by the time the sale is consummated, still constitutes a likelihood of confusion sufficient

to prove a trademark infringement claim.[159]

In this case, Defendants do not challenge and expressly concede the validity of Plaintiffs'

trademarks and all other elements of Plaintiffs' trademark infringement claim other than the

likelihood of confusion.[160] With respect to the first digit, Plaintiffs argue that the Ray-Ban® and

Oakley® trademarks are, at minimum, strong enough to be registrable marks without evidence of

secondary meaning in the marketplace, have been in continuous commercial use since 1957 and

1989 respectively, and are one of the most world-famous eyewear brands.[161] Defendants do not

challenge the strength of Plaintiff's trademarks.[162] The first digit favors a likelihood of confusion.

---

[155] *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998)
[156] *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 594 (5th Cir. 1985).
[157] *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008) (quoting *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 170 (5th Cir. 1986)).
[158] *Capece*, 141 F.3d at 194 (quotation omitted).
[159] *Luxottica Grp. S.p.A. v. Atl. Sunglasses LLC*, No. 4:15-cv-1795, 2017 WL 6885602, at *3 (S.D. Tex. Mar. 24, 2017) (Harmon, J.).
[160] Dkt. No. 43 at 6, ¶ 4.02; Dkt. No. 26-2 at 28, Q&A 48.
[161] Dkt. No. 26 at 21–23, ¶¶ 40–43.
[162] *See* Dkt. No. 43 at 6–7, ¶¶ 4.03–4.05.

With respect to the second digit, "[t]he similarity of the marks in question is determined by comparing the marks' appearance, sound, and meaning."[163] To compare the trademarks Plaintiffs own with the trademarks used by Defendants' flea market vendors, Plaintiffs set out a table with images from Plaintiffs' investigative reports, purporting to show photographs of the merchandise vendors sold at the flea market using Plaintiffs' trademarks.[164] But again, "[e]vidence on summary judgment may be considered to the extent *not* based on hearsay . . . ."[165] Because the Court has excluded the investigative reports as inadmissible, photographs therefrom as components of the investigative reports are also inadmissible. Therefore, Plaintiff has no admissible summary judgment evidence of the similarity of the marks. The second digit does not favor a likelihood of confusion.

Plaintiffs contend that the third digit favors a likelihood of confusion because Plaintiffs' business and Defendants' vendors' business is selling "sunglasses and related products."[166] Defendants counter with Plaintiffs' own evidence (specifically counsel Logan Bednarczuk's personal review of the products) that the sunglasses sold at the flea market were of inferior quality and the "markings on the eyewear" indicated that they were knockoff products.[167] However, the question at hand is "the similarity between the products and services provided by the defendant and plaintiff. The greater the similarity between the products and services, the greater the likelihood of confusion."[168] The Court agrees with Plaintiffs that, because Plaintiffs' business and some of Defendants' vendors' business is essentially identical, viz. selling eyewear, the third digit favors a likelihood of confusion.

---

[163] *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998).
[164] Dkt. No. 26 at 24–29, ¶ 45.
[165] *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995) (citing *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam)).
[166] Dkt. No. 26 at 29–30, ¶ 46; *see* Dkt. No. 26-4 at 7 (Moreno deposition discussing the flea market operations).
[167] Dkt. No. 43 at 7, ¶ 4.05 (quoting Dkt. No. 26-1 at 5, ¶ 11).
[168] *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 505 (5th Cir. 1980).

Plaintiffs argue that both Plaintiffs and Defendants sell directly to retail consumers, so there is an overlap of customer bases and identity of purchasers.[169] Defendants counter with Plaintiffs' own evidence that the customer bases are different.[170] Specifically, Logan Bednarczuk's declaration avers that Plaintiffs' trademarked products are sold at authorized specialty stores and department stores and online, and "Luxottica [and Oakley do] not offer [their] merchandise for sale through individuals, street vendors, unauthorized retail locations, or flea markets."[171] Defendants also point to their own evidence that "[t]he customer base at Ochoa's Flea Market is typically comprised of low socio-economic status individuals who are looking for and only able to purchase inexpensive items."[172] "Dissimilarities between the retail outlets for and the predominant consumers of plaintiff's and defendant's goods lessen the possibility of confusion, mistake, or deception."[173] The evidence indicates that the retail outlets (specialty stores versus a flea market) are starkly different, but that the customer bases share the common traits of seeking to purchase eyewear at retail.[174] With these competing intra-factor components, the Court holds that the fourth digit is neutral and favors neither party.

Plaintiffs admit that "there are dissimilarities in the nature and scope of Plaintiffs' advertising versus that of Defendants' tenants," but argue that Defendants' tenants nevertheless used signage with Plaintiffs' trademarks to draw consumer attention.[175] The evidence of signage used comes from Plaintiffs' investigative reports and cannot be considered. Even if such evidence

---

[169] Dkt. No. 26 at 30, ¶ 47.

[170] Dkt. No. 43 at 7, ¶ 4.06.

[171] Dkt. No. 26-1 at 2–4, ¶¶ 3–4, 7.

[172] Dkt. No. 47 at 2, ¶ 7.

[173] *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 505 (5th Cir. 1980) (quoting *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir. 1980)).

[174] *See Exxon Corp.*, 628 F.2d at 505 ("These customers, however, all have one trait in common-they are members of the car driving public. They turn to the plaintiff and defendant in order to keep their cars functional. Thus, there is an identity of purchasers.").

[175] Dkt. No. 26 at 30, ¶ 48.

could be considered, the question is "the similarity between the parties' advertising campaigns," not the similarity of the trademark to draw attention.[176] Plaintiffs assert that, "[s]ince 2016, Luxottica and Oakley have expended over $100,000,000 in advertising expenses,"[177] whereas "Ochoa's Flea Market has no conventional advertising and only a minimal presence on social media which provides contact information and hours of operation."[178] The Court agrees with Plaintiffs initial concession that the parties' advertising campaigns and media are dissimilar. The fifth digit does not support a likelihood of confusion.

With respect to the sixth and seventh digits, the defendants' intent and actual confusion, Plaintiffs repeatedly reference their investigative reports to argue that Defendants' vendors used Plaintiffs' trademarks to capitalize on Plaintiffs' reputation, generate initial consumer interest, and attract purchasers who would have been allured by the confusion.[179] However, there is no admissible summary judgment evidence of such trademark use and confusion. These digits do not favor a likelihood of confusion.

The final digit probes the degree of care exercised by potential purchasers,[180] but neither party offers any argument one way or the other on this factor.[181] The Court assumes this factor is neutral.

In summary, in testing the likelihood of confusion, only the first digit, regarding the strength of Plaintiffs' trademarks in the marketplace, and the third digit, regarding the similarity of the eyewear that Logan Bednarczuk analyzed that purportedly came from Defendants' flea market and Plaintiffs' products (but without admissible evidence that such eyewear *did* come from

---

[176] *Exxon Corp.*, 628 F.2d at 506.
[177] Dkt. No. 26 at 8, ¶ 4; *see* Dkt. No. 26-1 at 3, ¶ 6 ("Luxottica has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Ray-Ban® Trademarks.").
[178] Dkt. No. 47 at 2, ¶ 7.
[179] Dkt. No. 26 at 31–32, ¶¶ 49–51.
[180] *See Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).
[181] *See* Dkt. No. 26 at 32–33; Dkt. No. 43 at 7.

Defendants' flea market) supports Plaintiffs' claim of trademark infringement. Weighing against a likelihood of confusion are the similarity of trademarks used, the identity of retail outlets, the similarity of advertising, Defendants' vendors' intent, and any actual confusion. The digits militating against a likelihood of confusion are particularly important because the sixth and seventh digit are the best evidence of a likelihood of confusion and Plaintiffs have not shown that those digits support their claim.[182] The Court holds that there is simply insufficient evidence to show a likelihood of confusion and that Plaintiffs have failed to carry their burden to demonstrate entitlement to summary judgment as a matter of law on their claim of direct and therefore contributory trademark infringement.[183] Additionally, because some of the digits do not support a finding of actual confusion, the Court holds that Defendants have shown a genuine issue of material fact for trial that precludes entry of summary judgment against them.

Plaintiffs admit that all of their remaining claims—for contributory unfair competition, contributory trademark dilution, contributory trademark infringement under Texas law, contributory unfair competition under Texas law, and contributory unjust enrichment under Texas law—rise and fall with Plaintiffs' claim for contributory trademark infringement under the Lanham Act.[184] Defendants agree.[185] Indeed, "federal courts are also in agreement that the test for liability is likelihood of confusion: Under 15 U.S.C. § 1125, the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks. Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a likelihood of confusion?"[186] "The analysis with respect to [a plaintiff's] claims under the Lanham

---

[182] *See Future Proof Brands, L.L.C. v. Molson Coors Bev. Co.*, 982 F.3d 280, 298 (5th Cir. 2020).
[183] *See supra* notes 124–126.
[184] Dkt. No. 26 at 37–38, ¶¶ 62–64.
[185] Dkt. No. 43 at 12, ¶¶ 4.24–4.25.
[186] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (Stevens, J., concurring in the judgment) (cleaned up).

Act will be dispositive of its corresponding claims under Texas law as well. 'A trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions.'"[187]

Accordingly, because the Court holds that Plaintiffs have not demonstrated with competent summary judgment evidence a likelihood of confusion or that they are entitled to summary judgment with respect to their contributory trademark infringement claim, and because Defendants have demonstrated a genuine issue of material fact for trial, the Court also holds that Plaintiffs are not entitled to summary judgment on the remainder of their claims. Plaintiffs' motion for summary judgment[188] is **DENIED**.

### 2. *Defendants' Motion for Judgment on the Pleadings and Summary Judgment*

Defendants first move under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings against all of Plaintiffs' claims directed to the individual Defendants, viz. Norma Ochoa and Maria "Janie" Moreno, arguing that Plaintiffs' allegations do not establish any theory of liability for which Mses. Ochoa and Moreno could be individually liable.[189] Defendants also argue that Plaintiffs fail to sufficiently allege a claim for unfair competition.[190] Defendants also move for summary judgment, arguing that Plaintiffs lack evidence to sustain any individual liability claim against Mses. Ochoa and Moreno.[191] The Court will first adjudicate Defendants' motion for judgment on the pleadings before turning to Defendants' motion for summary judgment.

### i. *Rule 12(c) Arguments*

---

[187] *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010) (some internal quotation marks omitted) (quoting *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.,* 53 S.W.3d 799, 806 n.3 (Tex. App.—Austin 2001, pet. denied)).
[188] Dkt. No. 26.
[189] Dkt. No. 28 at 1–2, ¶ 1.01.
[190] *Id.*
[191] *Id.* at 1–2, ¶¶ 1.01–1.02.

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed." A Rule 12(c) motion is analyzed under the Rule 12(b)(6) standard.[192] "[T]he inquiry focuses on the allegations in the pleadings and not on whether the plaintiff actually has sufficient evidence to succeed on the merits."[193]

Under Rule 12(b)(6), "[a] motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts."[194] Under Federal Rule of Civil Procedure 12(b)(6), to avoid dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[195] In evaluating a motion to dismiss, courts first disregard any conclusory allegations or legal conclusions[196] as not entitled to the assumption of truth,[197] and then undertake the "context-specific" task, drawing on judicial experience and common sense, of determining whether the remaining well-pled allegations give rise to entitlement to relief.[198] Naked assertions devoid of factual enhancement, formulaic recitations of the elements of a cause of action, threadbare conclusory statements, and allegations that "do not permit the court to infer more than the mere possibility of misconduct" will not suffice.[199] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[192] *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

[193] *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009).

[194] *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995) (quotation omitted); *see Chatham Condo. Ass'ns v. Century Vill., Inc.*, 597 F.2d 1002, 1011 (5th Cir. 1979) (alteration in original) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)) ("The decision disposing [of] the case is then purely on the legal sufficiency of plaintiff's case: even were plaintiff to prove all its allegations, he or she would be unable to prevail.").

[195] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[196] *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quotation omitted) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

[197] *Mustapha v. HSBC Bank USA, NA*, No. 4:11-CV-0428, 2011 WL 5509464, at *2 (S.D. Tex. Nov. 10, 2011) (Hanks, J.) ("[A] court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.").

[198] *Iqbal*, 556 U.S. at 678–79; *see Fernandez-Montez v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").

[199] *Iqbal*, 556 U.S. at 678–79.

liable for the misconduct alleged."[200] The Court reads the complaint as a whole[201] and accepts all well-pleaded facts as true (even if doubtful or suspect[202]) and views those facts in the light most favorable to the plaintiff (because a Rule 12(b)(6) motion is viewed with disfavor[203]), but will not strain to find inferences favorable to the plaintiff,[204] but also will not indulge competing reasonable inferences that favor the defendant.[205] Courts have "jettisoned the [earlier] minimum notice pleading requirement"[206] and the complaint must plead facts that "nudge" the claims "across the line from conceivable to plausible."[207] The complaint must allege more than facts merely consistent with a defendant's liability;[208] the complaint must plead every material point necessary to sustain recovery and dismissal is proper if the complaint lacks a requisite allegation.[209] However, the standard is only "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."[210] A plaintiff need not plead evidence[211] or even detailed factual allegations, especially when certain information is

---

[200] *Id.*; *see In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quotation omitted) (holding that the "standard simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements").

[201] *See Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 506 (5th Cir. 2011) ("While the allegations in this complaint that the Golf Association's anticompetitive acts 'substantially affected interstate commerce' are not sufficient on their own, the complaint here read as a whole goes beyond the allegations rejected in *Twombly* and *Iqbal*.").

[202] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

[203] *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Turner v. Pleasant,* 663 F.3d 770, 775 (5th Cir. 2011) ("This court construes facts in the light most favorable to the nonmoving party, 'as a motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted.'")).

[204] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

[205] *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009).

[206] *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009).

[207] *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quoting *Twombly*, 550 U.S. at 570).

[208] *Covington v. City of Madisonville*, 812 F. App'x 219, 223 (5th Cir. 2020) (per curiam) (quoting *Iqbal*, 556 U.S. at 678).

[209] *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006); *accord Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

[210] *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010))

[211] *Copeland v. State Farm Ins. Co.*, 657 F. App'x 237, 241 (5th Cir. 2016).

peculiarly within the defendant's possession.[212] The Court is to give a liberal construction to the pleadings and disentitle a plaintiff from offering evidence to clarify and support their theories of liability only if there is no basis for liability.[213]

The Court is limited to assessing only the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which the Court may take judicial notice.[214] Attachments to the complaint become part of the pleadings for all purposes,[215] but the Court is not required to accept any characterization of them because the exhibit controls over contradictory assertions,[216] except in the case of affidavits.[217] Because the focus is on the pleadings, "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56,"[218] but not if the material to be considered is a matter of public record[219] or a website[220] and not if a defendant attaches documents to a motion to dismiss that are "referred to in the plaintiff's complaint and are central to her claim."[221]

[212] See Innova Hosp. San Antonio, LP v. Blue Cross & Blue Shield of Ga., Inc., 892 F.3d 719, 730 (5th Cir. 2018) (holding that pleading "on information and belief" is acceptable when the inference of culpability is plausible).
[213] See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312–13 (5th Cir. 2002); Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam) (citation omitted) ("The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint.").
[214] Innova Hosp. San Antonio, LP v. Blue Cross & Blue Shield of Ga., Inc., 892 F.3d 719, 726 (5th Cir. 2018).
[215] Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) (citing FED. R. CIV. P. 10(c)).
[216] Kamps v. Baylor Univ., 592 F. App'x 282, 284 n.1 (5th Cir. 2014) (citing United States ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 377 (5th Cir. 2004)).
[217] Bosarge v. Miss. Bureau of Narc., 796 F.3d 435, 440–41 (5th Cir. 2015) ("[W]hile the affidavits may be considered as an aid to evaluating the pleadings, they should not control to the extent that they conflict with [plaintiff's] allegations.").
[218] FED. R. CIV. P. 12(d).
[219] Joseph v. Bach & Wasserman, L.L.C., 487 F. App'x 173, 178 n.2 (5th Cir. 2012) (per curiam) (citing Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011)).
[220] Hyder v. Quarterman, No. CIV.A. C-07-291, 2007 WL 4300446, at *3 (S.D. Tex. Oct. 10, 2007) (Owsley, J.) (citing Hawk Aircargo, Inc. v. Chao, 418 F.3d 453, 457 (5th Cir. 2005) & Coleman v. Dretke, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam)).
[221] Causey v. Sewell Cadillac–Chevrolet, 394 F.3d 285, 288 (5th Cir. 2004).

First, the Court must confront Plaintiffs' argument that Defendants' Rule 12(c) motion is untimely and should not be considered.[222] In the case Plaintiffs cited for support, the Eastern District of Texas held that the Rule 12(c) motion was "delayed," but the court went on to adjudicate the merits of the motion and held that "Defendant's failure to mitigate damages defense" was sufficiently pled.[223] The case therefore does not support the proposition that a Rule 12(c) motion may be breezily dismissed because it was not filed earlier.

Turning to the merits, Defendants appear to argue that all federal law and state law causes of action asserted against Defendants Norma Ochoa and Maria "Janie" Moreno should be dismissed, but cite only Texas state law as support.[224] Under federal law, this Court has repeatedly held that natural individuals may be liable for trademark infringement under the federal Lanham Act, if the individual is an active mover in causing the infringement.[225] "As [the Fifth Circuit] has recognized in the context of trademark infringement, requiring a piercing of the corporate veil to hold individuals liable would be putting the cart before the horse."[226] "[A] corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil."[227] Moreover, "[t]he elements in common law trademark infringement under Texas law are the same as those under federal trademark law."[228] Defendants cite cases in which Texas courts held that

---

[222] Dkt. No. 42 at 10, ¶ 14 (citing *Jennings v. O'Reilly Auto Enters., LLC*, No. 4:17-CV-00837, 2019 U.S. Dist. LEXIS 10164 (E.D. Tex. Jan. 22, 2019)).

[223] *Jennings*, 2019 WL 286740, at *3–4.

[224] Dkt. No. 28 at 7–10, ¶¶ 4.01–4.08.

[225] *E.g.*, *Bridgestone Brands, LLC v. Katy Freeway Tire & Auto., Inc.*, No. CV H-15-2274, 2017 WL 6327652, at *5 (S.D. Tex. May 25, 2017) (Werlein, J.) (first citing *Mead Johnson & Co. v. Baby's Formula Serv., Inc.*, 402 F.2d 19, 23 (5th Cir. 1968); and then citing *Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 541 (S.D. Tex. 2013) (Costa, J.)).

[226] *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1349–50 (5th Cir. 1994).

[227] *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994), *quoted in John Crane Prod. Sols., Inc. v. R2R & D, LLC*, No. 3:11-CV-3237-D, 2012 U.S. Dist. LEXIS 63164, at *11 (N.D. Tex. May 4, 2012).

[228] *Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 730 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *All Am. Builders, Inc. v. All Am. Siding of Dall., Inc.*, 991 S.W.2d 484, 488 (Tex. App.—Fort Worth 1999, no pet.)).

the corporate officers may only be held liable when they breach an independent duty.[229] For example, when a plaintiff injured in the grocery store H.E.B. sued the corporation and individual corporate officers, the Texas Court of Appeals held that, because the plaintiff's allegations against the corporate officers were identical to the plaintiff's allegations against the corporate entity, "[s]uch undifferentiated allegations are insufficient to support a conclusion that [the corporate officers] individually owed the [injured plaintiff] an independent duty of care either by virtue of their positions as apex corporate officials or as a result of their own actions," so liability for negligence could not be imposed on the corporate officials.[230] Defendants invoke this line of cases to argue that "Plaintiffs fail to plead that the individual Defendants owe them a duty distinct from that which the company owes."[231] But again, the corporate entity does not relieve individuals from trademark infringement liability,[232] if individual Defendants Ochoa and Moreno "actively and knowingly caused [Ochoa's Flea Market] to continue leasing booths to infringing lessees."[233] Plaintiffs' claims are not subject to dismissal for any purported failure to pierce the corporate veil.

Defendants argue that Plaintiffs fail to sufficiently allege claims against Norma Ochoa and Maria "Janie" Moreno.[234] Plaintiffs counter that they alleged Mses. Ochoa's and Moreno's active and knowing furthering of the alleged infringement.[235] Specifically, Plaintiffs alleged that Mses. Ochoa and Moreno are co-owners and directors of Ochoa's Flea Market, LLC, that they control and operate the flea market, and that, "acting in concert and participation with each other, have

---

[229] Dkt. No. 28 at 8–9, ¶¶ 4.04–4.06 (first citing *Leitch v. Hornsby*, 935 S.W.2d 114, 116–18 (Tex. 1996); and then citing *Tri v. J.T.T.*, 162 S.W.3d 552, 562–63 (Tex. 2005)).
[230] *In re Butt*, 495 S.W.3d 455, 467 (Tex. App.—Corpus Christi 2016, orig. proceeding).
[231] Dkt. No. 28 at 10, ¶ 4.08.
[232] *Master Saddles Inc. v. Taylor*, No. 3:20-CV-3709-B, 2021 WL 1814697, at *9 (N.D. Tex. May 6, 2021).
[233] *Malletier v. Eisenhauer Rd. Flea Mkt., Inc.*, No. SA-11-CA-124-H, 2011 WL 13237798, at *3 (W.D. Tex. Dec. 19, 2011).
[234] Dkt. No. 28 at 10, ¶ 4.08.
[235] Dkt. No. 42 at 13–14, ¶ 21.

induced and/or materially contributed to the promotion and sale of counterfeit products."[236] Plaintiffs allege that they transmitted numerous letter notices, over the course of more than two years, informing Defendants that investigators identified vendors selling counterfeit products at the flea market.[237] Plaintiffs also allege that their "investigator visited the booth directly across the aisle from Defendants' business office and observed a large and open display of counterfeit sunglasses bearing the Ray-Ban® and Oakley® Trademarks."[238] Plaintiffs allege that the investigator noted this across-the-aisle-from-Defendants'-offices vendor selling counterfeit and infringing items on more than one occasion.[239]

To sufficiently plead Defendants' liability for contributory trademark infringement, Plaintiffs only need to allege that Defendants had knowledge of infringing activity and materially contributed, such as by leasing vendor space, to the infringing conduct of another.[240] Federal courts in the Fifth Circuit have applied the "willful blindness" test,[241] under which a person who suspects wrongdoing but deliberately fails to investigate may be held to have actual knowledge of trademark infringement under the Lanham Act.[242] A defendant may be held to the knowledge standard of what a reasonably prudent person would understand in the defendant's shoes when determining whether the defendant is liable for contributory trademark infringement.[243] The Court finds that, under the willful blindness test, Plaintiffs have sufficiently alleged Defendants' knowledge. Reading Plaintiffs' complaint as a whole,[244] and drawing reasonable inferences in

---

[236] Dkt. No. 1 at 3, ¶¶ 7–10.
[237] *E.g.*, Dkt. No. 1 at 13–14, ¶¶ 39–41; *id.* at 46–47, ¶¶ 81–82.
[238] *Id.* at 39, ¶ 71.
[239] *Id.* at 41, ¶ 74.
[240] *See supra* text accompanying notes 152–153.
[241] *See Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 685, 693 (W.D. Tex. 2008) (collecting cases).
[242] *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992).
[243] *See Malletier v. Tex. Int'l P'ship*, No. 4:10-cv-2821, 2011 WL 13253847, at *4 (S.D. Tex. Nov. 18, 2011) (Miller, J.) (quoting *Hard Rock Cafe Licensing Corp*, 955 F.2d at 1149).
[244] *See supra* note 201.

Plaintiffs' favor,[245] Plaintiffs sufficiently allege that Defendants Norma Ochoa and Janie Moreno as operators of the flea market knew or should have known from the repeated notices of infringement and open displays of allegedly infringing products that their vendors were selling counterfeit eyewear, but Mses. Ochoa and Moreno turned a blind eye and recurrently leased space to infringing vendors. The Court is unpersuaded by Defendants' argument that Plaintiffs failed to sufficiently plead Defendants Ochoa's and Moreno's personal liability for contributory trademark infringement.

Defendants offer one other argument seeking judgment on the pleadings. Defendants argue that Plaintiffs failed to adequately allege their unfair competition under Texas law claim because Plaintiffs failed to allege that Defendants committed an independent tort.[246] The Northern District of Texas has at least twice held that, because unfair competition is a general common law claim for an illegal act that interferes with the plaintiff's business, there must at least be an independent tort to constitute the illegal act, but when the purported independent tort is coterminous with a federal trademark infringement claim, there is no independent tort to sustain a claim for unfair competition.[247] The Western District of Texas disagrees. That court held that an independent tort *such as* a federal trademark infringement claim can "constitute an independent tort for the purposes of Texas unfair competition law."[248] This Court has held that a false advertising claim under the Lanham Act can sustain a claim for unfair competition under Texas law.[249] A well-trodden

---

[245] *See supra* note 203.
[246] Dkt. No. 28 at 14, ¶ 4.14.
[247] *See Cenorin, LLC v. Tacy Med., Inc.*, No. 3:12-CV-1745-L, 2013 WL 1194473, at *5 (N.D. Tex. Mar. 25, 2013) (first citing *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000); and then citing *EsNtion Recs., Inc. v. TritonTM, Inc.*, No. 3:07CV2027L, 2009 WL 3805827, at *12 (N.D. Tex. Nov. 13, 2009)).
[248] *Fringe Ins. Benefits, Inc. v. Beneco, Inc.*, No. A-13-CV-034-AWA, 2015 U.S. Dist. LEXIS 16989, at *18-19 (W.D. Tex. Feb. 11, 2015).
[249] *DP Wagner Mfg. Inc. v. Pro Patch Sys., Inc.*, 434 F. Supp. 2d 445, 462 (S.D. Tex. 2006) (Werlein, J.).

secondary source explains that trademark infringement is merely a species of unfair competition.[250]
Because all that is required in the Fifth Circuit to sustain a claim for unfair competition is an
independent tort[251] for the claim of unfair competition to "piggy-back" upon,[252] and a trademark
infringement claim is an independent tort, this Court holds that the latter line of cases is more
persuasive. The Court agrees with Plaintiffs that, because they pled numerous independent torts
including contributory trademark infringement and contributory trademark dilution, Plaintiffs have
alleged that Defendants committed an independent tort and Plaintiffs' claim for unfair competition
should not be dismissed for failure to plead an independent tort.[253]

    For the foregoing reasons, to the extent Defendants' motion seeks judgment on the
pleadings, such motion is **DENIED**. The Court now turns to Defendants' arguments for summary
judgment.

### ii.   Rule 56 Arguments

    Defendants contend, similar to their argument seeking judgment on the pleadings, that
Plaintiffs lack any evidence that Defendants were acting outside of their corporate capacity with
respect to any of the claims made in this case. Defendants essentially argue that, because anything
Norma Ochoa and Janie Moreno did relevant to Plaintiffs' claims was on behalf of their company,
Plaintiffs cannot pierce the corporate veil to hold Mses. Ochoa and Moreno liable in their

---

[250] 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 2:7 (5th ed. & Supp. Mar. 2022) (quoting S. REP. NO. 79-1333 (1946) ("There is no essential difference between trade-mark infringement and what is loosely called unfair competition. Unfair competition is the genus of which trade-mark infringement is one of the species; "the law of trade-marks is but a part of the broader law of unfair competition" (United Drug Co. v. Rectanus, 248 U. S. 90, 97). All trade-mark cases are cases of unfair competition and involve the same legal wrong.")).
[251] *See Taylor Pub. Co*, 216 F.3d at 486.
[252] *See Healthpoint, Ltd. v. River's Edge Pharms., L.L.C.*, No. SA-03-CV-984-RF, 2005 WL 356839, at *3 (W.D. Tex. Feb. 14, 2005).
[253] *See* Dkt. No. 42 at 17–18, ¶ 26.

individual capacities.[254] But the standard is not piercing the corporate veil;[255] the only question is whether Plaintiffs have evidence to substantiate their claims that the individual Defendants, with knowledge of or willfully blind to the infringing activity, abetted the infringement.[256]

The Court holds that Plaintiffs have sufficient evidence of contributory trademark infringement to preclude summary judgment for Defendants. For example, when Plaintiffs' counsel deposed Norma Ochoa and quizzed her about her response to Plaintiffs' second notice of infringement from January 2018, Ms. Ochoa testified as follows:

> Q. Do you see in the first paragraph where it says that the investigator identified Booths A13 and 176 as dealing in counterfeit Oakley and Ray-Ban products?
>
> A. Yes, ma'am.
>
> Q. Did you ever speak with the vendors of Booth A13 or 176 about this letter?
>
> A. No, ma'am.
>
> Q. Did you ever visit Booths A13 and 176 after receiving this letter to investigate or inspect their merchandise?
>
> A. No, ma'am.
>
> Q. Did you tell them that they were not allowed to distribute counterfeit products?
>
> A. No, ma'am.
>
> Q. Do you know which vendor would have occupied the booth left of the north entrance in May of 2018?
>
> A. No, ma'am.
>
> Q. Do you have any documents that would identify the vendor in the booth left of the north entrance in May of 2018?
>
> A. No, ma'am.
>
> Q. Are you aware that this is the same vendor that was referenced in Luxottica's initial notice to Ochoa's as dealing in counterfeit goods?
>
> A. No, ma'am, no, ma'am.[257]

---

[254] Dkt. No. 28 at 11–13, ¶¶ 4.10–4.13.

[255] *See supra* notes 225–227.

[256] *See supra* notes 151–152, 240–243, and accompanying text.

[257] Dkt. No. 26-3 at 10–11, 19:13–20:12; *see id.* at 31–32, 44:23–24 ("Q. Do you see in this first paragraph that this letter is discussing the vendor located directly across from the business office at the market? A. Yes. Q. And do you see that that same vendor was once again found selling counterfeit products? A. Yes. Q. Do you see that this was the fourth time in a little over seven months that Oakley had complained about this vendor at Ochoa? A. Yes, ma'am. Q. Do you know if any specific action was taken against this vendor as a result of the November 27th, 2019 letter? A. No, I don't know. Q. Did you yourself speak with the vendor located across from the business office -- A. No. Q. --

Defendant Moreno's testimony is substantially similar.[258] For the same reasons as the Court denied Defendants' motion for judgment on the pleadings, the Court is unpersuaded by Defendants' argument that there is no evidence to support Plaintiffs' claim of contributory trademark infringement.[259] The quoted segment of Defendant Ochoa's deposition indicates that she was notified of the infringement, turned a blind eye to it, and leased again to the same vendor. With all reasonable inferences drawn in nonmovant Plaintiffs' favor,[260] Plaintiffs have adduced sufficient evidence to reach the jury on the issue of Defendants' contributory liability. Defendants do not challenge, under Rule 56, any other aspect of Plaintiffs' claims.[261] Accordingly, Defendants' motion for judgment on the pleadings and motion for summary judgment is **DENIED** in its entirety.

### V. CONCLUSION AND HOLDING

For the foregoing reasons, the Court **GRANTS** Defendants' motion for leave to file a surreply,[262] but **DENIES** all other motions in their entirety.[263] Parties are to follow this Court's January 18, 2022 scheduling order.[264]

IT IS SO ORDERED.

DONE at McAllen, Texas, this 21st day of March 2022.

_____
Micaela Alvarez
United States District Judge

---

on receiving this November 27th, 2019 letter? A. No, ma'am. Q. Did you advise that vendor that they needed to stop the sale of any counterfeit products? A. No, ma'am. Q. Did you investigate their merchandise to see if there were any counterfeit products in their merchandise? A. No.").
[258] *See* Dkt. No. 26-4 at 10–13, 17:7–20:21.
[259] *See supra* Section IV.b.2.i.
[260] *See supra* notes 136, 146.
[261] *See* Dkt. No. 28 at 12–13, ¶¶ 4.10–4.13.
[262] Dkt. No. 48.
[263] Dkt. Nos. 26–28.
[264] Dkt. No. 41.